MILLERD and another, Administrators, Respondents, vs. THOMPSON, Administratrix, Appellant.

*February 4 — February 23, 1897.*

*Agency: Evidence: Error, when harmless.*

1. In an action for the price of sleds alleged to have been sold by M. to Q. on his representation that he was authorized by T., deceased, of whom the defendant is administratrix, to buy them in his name, he giving an order on T. for the price, *held,* that letters written by T. to M. after he had been notified of the purchase, in the first of which he asked for time for payment, in the second of which, written four months later, he promised to send the money soon, and in the third, some two months later, he asked M. to come to his place if Q. had not paid for the sleds, and they

would determine what should be done, though not constituting any part of the contract, were competent evidence as to Q.'s authority to buy the sleds on the credit of T., to be considered by the jury for what they were worth in connection with all the other evidence.

2. The exclusion of an answer to a question asking an explanation of letters put in evidence, if error, is harmless where the witness had already testified fully as to all that the question was calculated to elicit.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This action was brought for the recovery of the price or value of four sets of logging sleighs, amounting to $200, alleged to have been sold by the plaintiffs' intestate, Ira Millerd, in his lifetime, to H. D. Quant, at the special instance and request of Ira Thompson, in his lifetime, and the answer was a general denial. At the trial, before a jury, H. D. Quant testified that Ira Thompson, the defendant's intestate, sent him to New London to see Millerd, and to buy the sleds of him. Four sets were spoken of, but more if he needed them. That he bought them by Thompson's orders, and that he was acting as his agent, and communicated that fact to Millerd, and the price agreed on was $50 a set. That he gave Millerd an order on Thompson, and told him that he would want some time on the sleighs. On cross-examination he testified he expected he bought those sleds for his own benefit, but by the order of Mr. Thompson, for whom he was logging and with whom he had a contract, by which he was to put in certain timber. He was not putting in the timber by the thousand, but by the cord. That it was pulp wood. That he did not tell Millerd that he was buying these sleds for Thompson, or buying them for himself, either way. He did not know that the question was asked, but told him that he was sent there to buy them by Mr. Thompson. That he thought he gave him to understand that he was buying them as Thompson's agent. This was Decem-

ber 20, 1892.   On the 23d of December, 1892, Quant wrote
to Thompson a letter in which he said: "I bought four sets
of sleighs of Millerd, and gave him an order on you; he will
give you time on them."   Thompson thereupon wrote to
Millerd, December 24th, saying it would be an accommoda-
tion for him "to wait until I begin to draw some pay from
my pulp wood, which will be in the course of about thirty
days, when I can pay you in full."   April 25th Millerd wrote
Thompson, referring to the last letter, and asking, "Do you
want any longer time?   If so, please state what."   April 27,
1893, Thompson wrote to Millerd, in reply, saying: "If it is
perfectly satisfactory to you, I would like to give you a note
for six months, bearing interest.   If it was convenient for
me to pay it now, I would not ask this; but if you prefer
any different arrangement I will try and make it.   Write
and let me know what you can do."   A letter dated Septem-
ber 7, 1893, from Thompson to Millerd, in reply to one from
Millerd of the 5th of September, was to the effect that "it
will be impossible to send it this week, but as soon as I can
collect in some I will send it to you."   December 6, 1893,
Thompson wrote to Millerd: "Has Quant settled with you
for those sleds?   If not, I want you to get what you can out
of the sleds, and the balance is what I consider you can hold
me for.   If he has not settled for them, please come down
and let me know, and we will talk it over and conclude what
is best to be done."   Evidence was given tending to show
that *A. W. Millerd*, son of Ira Millerd, acted as agent for
his father about his business during the latter part of his
life, and he testified to a conversation between himself and
Quant at the time the sleds were purchased, in which the lat-
ter said that he wanted the sleds for Mr. Thompson, and said
that Thompson would pay for them, and that he subsequently
notified Thompson, by letter of December 23, 1892; that in
the spring of 1893 he had a conversation with Thompson in
relation to the sleds, in which the latter said that Quant was

behind in his logging business with him, and that he was willing to pay for the sleds, but that he would like to have him assist him in getting possession of the sleds; and having them turned over from Quant to himself, and asked for more time; that the letter he addressed to Thompson notified him of the transaction, and that Quant had the sleds, and that he had said Thompson would pay for them; that he could not give the exact language. Another letter was put in evidence from Millerd to Thompson, dated May 13, 1893, stating that Quant's order on Thompson was dated December 21, 1892, on demand, and proposing to take a note, with six per cent. interest from February 15th up to the time he could best pay, and Millerd testified that Thompson accepted that order.

The defendant testified in his own behalf, as to the contract between himself and Quant, in regard to cutting, piling, and hauling pulp wood by the cord. He denied that he had authorized Quant or sent him to Millerd to buy sleds; that he knew, December 23, 1892, that he had bought sleds of Millerd and given him an order on himself; that it was presented by Ira Millerd, but he did not accept it, and that he was not then owing Quant anything. He testified to having received the letter from Millerd, to the effect that he had sold Quant the sleds, and he had given him an order on him (Thompson); that that was the way the letter read, he thought. He was asked what explanation he made in regard to paying the order when presented. This was objected to, and the objection sustained. He testified that at the time he wrote the letter of December 24, 1892, he did not know that Quant had represented to Millerd that he had bought those sleds for the defendant; that at the time this was written Quant came down there, and represented that he had 1,500 or 1,600 cords cut, and there would have been something coming to him if he had had that amount cut, "and it was on the strength of that I promised, but he did not have it cut, nor half of it." "Q. This letter was writ-

ten, then, upon the presumption that he had that there, and, if he had, you would have paid it out of what was due him?" Objected to as leading and incompetent, and the court excluded the testimony, ruling that the letter was the best evidence of what was said. That *Arthur Millerd* and Quant in the spring came to see him about making a bill of sale of the sleds from Quant to defendant, and he told *Arthur Millerd* he would pay for them. That he said, "If I was going to pay for the sleighs, I wanted the sleighs," and he claimed that he had sold them to Quant. Quant claimed he needed the sleighs, and wanted him to pay for them. Quant refused to give the sleighs to him. Millerd represented he had sold them to Quant. That his promise in the letter to pay for the sleighs was made upon the strength of Quant's representation of having so much pulp wood cut. That promise was predicated upon the fact that the sleds were delivered to Mr. Quant, so far as Millerd was concerned. That he promised to pay because Quant represented he had got so much pulp wood cut there, but he did not convey that information to Millerd before writing the letter to him which contained the promise.

*A. W. Millerd*, in rebuttal, testified that he understood Thompson to say that he had sent Quant up to buy the sleighs for him (Thompson), and that Thompson said he would pay for them, and denied having said that he sold the sleds to Quant. Quant, being called on behalf of the defendant, testified that he bought these sleds for himself as well as for Thompson; that there was nothing said about his being sent there by Thompson to buy them; that he did not say anything to Millerd about being sent there by Thompson to buy them, and that the witness did not promise to pay Millerd for them; that he had not represented anything to Millerd more than that he was sent there to buy sleds of him, if he could find any that suited him; that he sold the sleds for the benefit of Mr. Thompson as well as

himself, as he understood it; that he considered that it was at Thompson's risk he was buying them of Millerd, and for that reason he gave the order on Thompson, and because he was authorized to do so,— to buy the sleds of Millerd,— if he could find those that suited him.   On cross-examination he said that it was a part of his contract with Thompson that he (Thompson) was to furnish him with sleighs,— that is, buy them for him,— and they were to be charged to him, of course, but he (Thompson) was to pay for them.

The court charged the jury that if by the fair weight of the evidence they believed that the defendant authorized and empowered Quant to represent to Millerd that he (Thompson) desired or was willing that he (Millerd) should deliver the sleds mentioned to Quant, on the credit of the defendant, that he, the defendant, would be responsible and pay for the sleds so delivered; that Quant so represented to Millerd, and Millerd, believing and acting upon the representations, agreed with Quant upon the sleds to be delivered, and the price thereof, and delivered the same upon the credit of the defendant,— in such case the transaction amounted to a purchase of the sleds by the defendant, who would be liable to Millerd for the contract price, as fully as if the defendant had personally made the contract and himself received a delivery of the sleds, and in such event the plaintiffs would be entitled to a verdict.   That if Quant was not authorized in any way by the defendant to represent to Millerd that he desired to buy, or was willing to purchase or become responsible for, the sleds, or desired that Millerd should sell or part with the sleds on the credit of the defendant, and if the defendant did not authorize Quant to make the purchase on his (defendant's) credit, in such case Quant's representations to Millerd — that is, that he had such authority — could not and did not bind the defendant, and in that event the plaintiffs could not recover, if the representations were not shown to have been made by direction of the defendant.

Millerd and another vs. Thompson.

That the letters introduced in evidence did not of themselves constitute a contract, and, without the aid of other evidence, render the defendant liable to the plaintiffs in the action; but the letters were competent evidence for what the jury should deem them worth, in connection with the remainder of the entire evidence, in determining whether or not the original transfer of the sleds by Millerd was in fact upon the credit of the defendant, and pursuant to authority given by the defendant to Quant to purchase them upon defendant's credit.

The jury found for the plaintiffs in the sum of $200, and a motion for a new trial was made, on the ground that the verdict was against the evidence, and for errors in the charge, and in refusing to receive evidence offered by the defendant to explain the language used in the letter of the 24th of December, 1892, and other letters written by the defendant. The motion was overruled, and plaintiffs had judgment. The defendant appealed.

For the appellant there was a brief by *Gerrit T. Thorn*, attorney, and *W. W. Gilman*, of counsel, and oral argument by *W. W. Gilman*. They argued, *inter alia*, that an agent's authority cannot be established by the statements or admissions of the agent himself, and here there was no other evidence thereof, though the agency was denied by the alleged principal. *Grover & Baker S. M. Co. v. Polhemus*, 34 Mich. 247; *Bacon v. Johnson*, 56 id. 182; *McCarty v. Straus*, 21 La. Ann. 592; *Kelly v. Estate of Strong*, 68 Wis. 152, 157. Evidence should have been received to explain, by the circumstances under which they were written, the letters put in evidence, they not being part of the *res gestæ*. *Lamon v. French*, 25 Wis. 37; *Rockwell v. Mut. L. Ins. Co.* 21 id. 548, 555; *Noble v. Epperly*, 6 Ind. 468; *Bank v. Kennedy*, 17 Wall. 19; *Knapp v. Harden*, 1 Gale, 47; *Sourse v. Marshall*, 23 Ind. 194; *Roe v. Day*, 7 Carr. & P. 705; *Enos v. Tuttle*, 3 Conn. 250; *Russell v. Frisbie*, 19 id. 205; *Carter*

*v. Buchannon,* 3 Ga. 513. It was error to instruct the jury that they might infer authority from those letters. 1 Greenl. Ev. § 13, note 2; Stephen's Dig. of Ev. (Chase's ed.), note VI on articles 11, 12; 1 Rice, Ev. § 34.

For the respondents there was a brief by *Felkers, Goldberg & Aarons,* attorneys, and *George Howie,* of counsel, and oral argument by *C. W. Felker.*

PINNEY, J. 1. The principal question in this case is whether Quant had authority from the defendant's intestate, Thompson, to buy the sleds on his credit and account, and whether they were accordingly in fact sold by Millerd on his credit and account. This involved, of course, the question of Quant's agency to purchase the sleds on the credit and account of the defendant Thompson. This issue, and the law applicable to it, was clearly explained by the court to the jury, and no exceptions were taken to the leading portion of the charge. There was sufficient evidence to warrant the jury in finding the verdict for the plaintiffs. It is amply sustained by the evidence. We cannot consider whether it is contrary to the weight of evidence.

2. It was agreed by counsel for both parties that the letters of themselves did not constitute a contract between the parties of the purchase and sale of the sleds; that they were not writings of a contractual character,— and the court so instructed the jury, and, further, that the letters were competent evidence for what the jury should deem them worth, in connection with the remainder of the evidence, in determining whether or not the original transfer of the sleds by Millerd to the defendant's intestate was in fact upon the credit of the defendant, and pursuant to authority given by him to Quant to purchase them upon the credit of the defendant. It is said that this instruction was equivalent to saying to the jury that, while the letters did not render the defendant liable and did not constitute a contract, the jury

Millerd and another vs. Thompson.

might *infer* from them that the defendant authorized Quant to purchase the sleds on his credit. Quant so represented to Millerd, and Millerd, on the faith of such representation, let Quant have the sleds on Thompson's credit. The testimony of Quant, *A. W. Millerd*, the son of the plaintiffs' intestate, and of the defendant's intestate, Thompson, was before the jury, and, as we have said, it tended to make out the case submitted to them. The court did not tell the jury what they might infer from the letters. The more important of the letters were written by the defendant Thompson, after Quant had written him that he (Quant) had "bought four sets of sleighs of Millerd, and gave him an order on you; he will give you time on them." And on the next day the defendant Thompson wrote to Millerd, asking him "to wait until I begin to draw some pay from my pulp, which will be in the course of about thirty days, when I can pay you in full." He afterwards wrote Millerd three other letters, the material portions of which have been stated. The court rightly told the jury that the letters were competent evidence for what the jury should deem them worth, in connection with the other evidence upon the issues stated, and, in substance, that the jury were to determine the issues from the entire evidence.

3. The defendant's counsel, in his examination of the defendant as a witness in his own behalf, sought to draw out from him an explanation of how he came to write the letter of December 24, 1892, and make the acknowledgment it contained; and in answer he stated, in substance, that Quant had represented that he had about 1,500 or 1,600 cords of pulp wood cut, and that there would be something coming to him. "On the strength of that, why, I promised; but he didn't have it cut, nor the half of it." The defendant's counsel, pressing the matter further, said: "This letter was written, then, upon the presumption that he had that there, and if he had, you would have paid it out of what was due him?"

He had already in substance testified to all that the question was calculated to elicit, but the question was objected·to as leading and incompetent. The court stated that "the letter was the best evidence of the language employed, and spoke for itself, and that the witness could not translate it," and sustained the objection. The question was certainly leading, and addressed by counsel to his own client. There was nothing obscure or ambiguous in the language of· the letter. The defendant testified quite fully as to the circumstances under which he wrote the letters, and no other evidence offered to explain them was excluded. The exceptions relied on are, we think, without merit. There was no error affecting the substantial rights of the defendant.

*By the Court.*— The judgment of the circuit court is affirmed.